Jenn French, Cal. State Bar No. 265422
jenn@frenchlawapc.com
**JENNIFER M. FRENCH, APC**
1050 University Ave., Ste. E107-80
San Diego, CA 92103
Telephone: 858.205.4119

Amber L. Schubert, Cal. State Bar No. 278696
aschubert@awkolawllp.com
Sonum Dixit, Cal. State Bar No. 353395
sdixit@awkolawllp.com
**AWKO LAW LLP**
2193 Fillmore Street
San Francisco, California 94115
Telephone: 850.202.1010

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

J.M.A., on behalf of her minor children J.A., L.A., and N.A., and all others similarly situated,

Plaintiffs,

vs.

EDUCATIONAL TESTING SERVICE and DOES 1-25, inclusive,

Defendants.

Case No.: '26CV6275 BJC GC

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## SUMMARY OF THE ACTION

1. Plaintiff J.M.A. brings this class action against Educational Testing Service (ETS) for its failure to adequately secure and safeguard her minor children J.A., L.A., and N.A. and millions of other public and charter school students' personally identifying information (PII).[1]

2. Educational Testing Service (ETS) is a "nonprofit assessment organization under contract with the State of California to provide state and federally required testing to all students enrolled in California public schools."[2]

3. ETS "supports California's statewide assessment programs, including the California Assessment of Student Performance and Progress (CAASPP) and the English Language Proficiency Assessments for California (ELPAC)."[3] Plaintiff's minor children and Class Members provided their PII to ETS as a condition of participating in these required statewide assessment programs.

4. ETS owes students an affirmative duty to adequately protect and safeguard this private information against theft and misuse. Despite such duties created by statute, regulation, and common law, at all relevant times, ETS utilized deficient data security practices, thereby allowing sensitive and private data to fall into the hands of strangers.

5. "On September 25, 2026, ETS identified unauthorized activity involving a secure file transfer protocol (SFTP) site used to exchange California statewide assessment information with [the California Department of Education (CDE)]."[4]

6. ETS learned that "an unauthorized party used a compromised login credential to access the site and copy files containing California student information at various times between May 22 and September 18, 2026" (the Data Breach).[5] The Data Breach involved

[1] *Educational Testing Service (ETS) Incident*, Cal. Dep't of Educ. (Oct. 16, 2026), https://www.cde.ca.gov/nr/in/ets-incident.asp#breachletter (last visited Oct. 30, 2026) (*ETS Incident*).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*

"[i]nformation about California students, including but not limited to all students enrolled in the three previous school years[.]"[6]

7. Over 5.7 million students were enrolled in California public schools in the 2025–26 school year alone.[7]

8. But for ETS's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect student PII, the Data Breach would not have occurred.

9. ETS is well-aware that it is at high risk of attempted cyberattack due to the high value of the sensitive data. But despite ETS's awareness of both the value and sensitivity of the data it safeguarded, and the serious risk presented by insufficient security practices, ETS did not take sufficient steps to ensure that its systems were secure. ETS knew or should have known about the risk to the data it stored and processed, and the critical importance of adequate security measures in the face of increasing threats.

10. The Data Breach was directly and proximately caused by ETS's failure to implement reasonable and industry-standard data security practices necessary to protect its systems from a foreseeable and preventable cyberattack. Through this wrongful conduct, the sensitive PII of potentially millions of students is now in the hands of cybercriminals, who target this sensitive data for its value to identity thieves. Plaintiff's minor children and Class Members are now at a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last the rest of their lives.

11. By aggregating information obtained from the Data Breach with other sources or other methods, criminals can assemble a full dossier of private information on an individual to facilitate a wide variety of frauds, thefts, and scams. Criminals can and do use victims' names and other personal information to open new financial accounts, incur

[6] *Id.*
[7] Tim Fang, *California State Testing Data Breach May Impact Millions of Students, Officials Say*, CBS News (Oct. 20, 2026), https://www.cbsnews.com/sanfrancisco/news/california-state-testing-ets-data-breach-impact-millions-of-students-officials-say/ (last visited Oct. 30, 2026).

credit charges, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII was stolen becomes aware of it. Any one of these instances of identity theft can have devastating consequences for the victim, causing years of often irreversible damage to their credit scores, financial stability, and personal security.

12. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes. Moreover, Plaintiff and Class Members have lost the inherent value of their private data.

13. Moreover, ETS's failure to promptly notify Plaintiff and Class Members that they had been impacted by this data breach made it more difficult for Plaintiff to take swift action on behalf of her minor children to respond to the breach.

14. Plaintiff and the Class will have to incur costs to pay a third-party credit and identity theft monitoring service for the rest of their lives as a result of the Data Breach.

15. As a result of ETS's conduct and the resulting Data Breach, Plaintiff's minor children and Class Members' privacy has been invaded, their PII is now in the hands of criminals, they have either suffered or will suffer fraud or identity theft or face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

16. Plaintiff, on behalf of her minor children and all others similarly situated, herein alleges claims for negligence, breach of implied contract, invasion of privacy under Article I, Section 1 of the California Constitution, and violation of the California Customer Records Act (CCRA), California Consumer Privacy Act of 2018 (CCPA), and California's Unfair Competition Law (UCL). Plaintiff, on behalf of her minor children and the Class seeks: (i) actual damages, economic damages, statutory damages, and nominal damages; (ii) punitive damages; (iii) fees and costs of litigation; (iv) injunctive relief, including the adoption of reasonably sufficient practices to safeguard PII in ETS's custody, care, and control in order to prevent incidents like the Data Breach from

recurring in the future and for ETS to provide long-term identity theft protective services to Plaintiff and Class Members; and (v) such other relief as the Court deems just and proper.

## PARTIES

### A. Plaintiff

17. Plaintiff J.M.A. and her minor children J.A., L.A., and N.A. are residents of San Diego, California and citizens of California.

### B. Defendant

18. Defendant Educational Testing Services is a New York nonprofit corporation with its principal place of business located at 660 Rosedale Road, Princeton, New Jersey.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act because at least one member of the putative Class, as defined below, is a citizen of a state other than that of ETS, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2)(A).

20. This Court has specific personal jurisdiction over ETS because ETS purposefully avails itself of the privileges of conducting substantial, continuous, and systematic business within California. ETS contracted with the CDE to administer student assessments, and collected, received, and maintained data of California students for assessment, including students in this District. Through these activities, ETS knowingly collects, stores, and processes the PII of millions of California residents in connection with these student assessments, which are administered in the State of California. A substantial part of the conduct giving rise to Plaintiff and her minor children's claims arose out of ETS's activities in California. ETS also maintains an office in Sacramento, California.[8]

[8] *ETS Offices*, Educ. Testing. Serv., https://www.ets.org/about/locations.html (last visited Oct. 30, 2026).

21. ETS has repeatedly invoked the benefits and protections of California's laws and economy by contracting with California residents, entering ongoing relationships with them, and engaging in continuous business operations through California schools and the CDE. The claims asserted here arise directly out of those contacts because Plaintiff's minor children's PII was collected in California, stored on systems used to service California students, and compromised in ETS's course of conduct that gave rise to this action. The exercise of jurisdiction over ETS in this District is therefore consistent with due process and California's long-arm statute. ETS's conduct caused injury both to California residents and to similarly situated individuals nationwide.

22. Venue is proper in this District because ETS transacts business within this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391(b)(2). ETS administers California's statewide assessments to students located in public schools located in this District, maintains the data of Class Members who attended public schools in this District in the past three years, and derives material revenue from those operations. Plaintiff's minor children attend schools in this District, and in doing so provided the PII that ETS collected, stored, and ultimately compromised in the Data Breach from this District. ETS's collection and retention of California students' PII, including Plaintiff's minor children, forms the basis of this lawsuit, and those activities occurred in substantial part within this District.

## FACTUAL BACKGROUND

### A. ETS Collects, Stores, and Maintains PII from Students

23. California contracts with ETS to provide state and federally required testing to all students enrolled in California public schools. "For over 75 years, ETS has collaborated with corporations, governments, membership organizations, private foundations and other entities to help them design, deliver, manage and score assessment programs that drive better outcomes."[9]

[9] *Case Studies*, Educ. Testing. Serv., https://www.ets.org/content/ets-org/ca/en/eas/clients.html (last visited Oct. 30, 2026).

24. According to CDE, "ETS supports California's statewide assessment programs, including the California Assessment of Student Performance and Progress (CAASPP) and the English Language Proficiency Assessments for California (ELPAC)."[10]

25. According to ETS's website, "ETS has built a longstanding relationship with the [CDE] by dedicating researchers, psychometricians and educators to meet and exceed program expectations."[11]

26. ETS also "has influenced the direction of assessments, adding features, grades and new content areas to the CDE's online platform for student assessments."[12]

27. In its K-12 Student Data Privacy Statement, ETS states that it "processes K-12 Student Data as a 'data processor' or 'service provider' to your school in order to provide the services to you and your school, pursuant to our contracts with your school and applicable laws."[13]

28. ETS uses student data to "[p]rovide you with the products, content or services selected by you, your instructors or your school[,]" to "[u]understand how you use [its] products, content and services," to "[a]ssure academic integrity," and to "[m]anage [its] everyday business needs[.]"[14]

29. ETS represents that it "protects K-12 Student Data at all times using appropriate security measures, including encryption, and disclosing the information only to third parties that are capable of and contractually obligated to maintaining its

[10] *ETS Incident*, *supra* note 1.
[11] *Enhanced California's K-12 Assessment Programs for Science and Beyond*, Educ. Testing. Serv., https://www.ets.org/content/ets-org/ca/en/eas/clients/california-k-12.html (last visited Oct. 30, 2026).
[12] *Id.*
[13] *K-12 Student Data Privacy Statement*, Educ. Testing. Serv., https://www.ets.org/legal/privacy/k-12-student-data-privacy-statement.html#accordion-35aa3ff03d-item-e125f159f2 (last visited Oct. 29, 2026).
[14] *Id.*

confidentiality and security."[15] And it claims that it does not retain student data for "longer than needed to fulfill the educational purposes for which it was collected."[16]

30. ETS is aware of the sensitive nature of the PII it collects, and it acknowledges the importance of data privacy. ETS's public-facing statements on privacy and security make it clear that it is aware of the need to safeguard the sensitive PII entrusted to it by customers as part of providing its educational testing services.

31. Despite these strong proclaimed proactive policies and approaches to data security and privacy for their customers, ETS failed to adequately secure and safeguard its systems and networks from a foreseeable and preventable cyberattack. This conduct proximately resulted in the Data Breach and significant harm to Plaintiff and the Class.

**B. The Data Breach Exposed Valuable PII**

32. As noted above, ETS identified unauthorized activity involving an SFTP cite used to exchange assessment information with the CDE on September 25, 2026.[17] It shared that an unauthorized party accessed the site and copied files with California student information at numerous times between May 22 and September 18, 2026.[18]

33. On October 2, 2026, CDE notified County and District Superintendents and Charter School Administrators about the Data Breach.[19] But it did not begin notifying affected individuals like Plaintiff until on or around October 16, 2026.[20]

34. The following data was accessed and copied: student names; dates of birth; residential addresses; schools; districts; grade levels; Statewide Student Identifiers (SSID); local student identifiers; demographic information, including gender, race or ethnicity, primary language, country of origin, and English learner status; Disability and Section 504 status, testing accommodations, and primary disability type; eligibility status for the following programs: Title I, Part A; Title I, Part C; McKinney-Vento; and Military

---

15 *Id.*
16 *Id.*
17 *ETS Incident*, *supra* note 1.
18 *Id.*
19 Mary Nicely, *Vendor Incident Report*, Cal. Dep't of Educ. (Oct. 2, 2026), https://www.cde.ca.gov/nr/in/yr26inltr1002.asp (last visited Oct. 30, 2026).
20 *ETS Incident*, *supra* note 1.

Connected Student; English language proficiency information and statewide assessment registration, participation, and results, where applicable.[21]

35. CDE has confirmed that affected individuals include current and former students enrolled in California public schools between 2023 and the current school year, as well as students who left a California school since 2006 and did not confirm transfer to another school with CDE.[22] The Data Breach therefore affected not only current students but also former students—many that are now adults, and many of whom no longer live in California.[23]

36. CDE has also cautioned that not receiving a notification letter does not necessarily mean that an individual's information was unaffected, particularly where contact information has changed.[24]

37. Despite ETS's duties and commitments to safeguard sensitive and private information, ETS failed to follow industry-standard practices in securing Plaintiff's minor children and the Class Members' PII, as evidenced by the Data Breach.

38. ETS has not provided any details about the dates of the breach, the duration of the breach, the root cause of the Data Breach, the vulnerabilities exploited, the criminals responsible for the breach, and the remedial measures undertaken to ensure such a breach does not occur again. To date, ETS has not explained or disclosed these facts to Plaintiff and Class Members.

39. Without these details, Plaintiff and Class Members' ability to mitigate harms resulting from the Data Breach is severely diminished.

40. ETS has offered affected individuals only 24 months of identity protection services through Experian IdentityWorks.[25] That offer is inadequate. Much of the exfiltrated data—including dates of birth, disability information, country of origin, and history of homelessness or federal program eligibility—is permanent and cannot be

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

changed. And because Plaintiff's minor children and many Class Members are young children, they might not fully realize the extent of identity theft committed in their names until they first apply for credit, employment, financial aid, or housing—long after ETS's two-year offer expires.

**C. ETS Had Ample Notice That It Was a Likely Cyberattack Target**

41. At all relevant times, ETS knew, or should have known, that the PII it was entrusted with was a target for malicious actors. ETS knew this given the unique type and the significant volume of data on its networks, servers, and systems, comprising individuals' detailed and confidential personal information and, thus, the significant number of individuals who the exposure of the PII would harm.

42. As custodian of Plaintiff's minor children and Class Members' PII, ETS knew or should have known the importance of protecting their PII, and of the foreseeable consequences and harms to such persons if any data breach occurred.

43. The Data Breach was foreseeable as the education sector has increasingly been targeted by cybercriminals. "In 2025, U.S. schools experienced more than 3,000 attempted attacks per week, and more than half of the 500 K–12 respondents to a survey reported having experienced a cyberattack."[26]

44. According to Doug Thompson, chief education architect and director of solutions engineering for Tanium, "[i]nstead of targeting individual campuses, attackers are moving up the data supply chain to the platforms that sit underneath thousands of institutions at once."[27]

45. For example, 70 million students and staff were targeted by the data breach of PowerSchool's Student Information System (SIS) in December 2024.[28] Plaintiffs in the

---

[26] *Instructure Discloses Second Data Breach in Less Than a Year*, DataBreaches.net (May 3, 2026), https://databreaches.net/2026/05/03/instructure-discloses-second-data-breach-in-less-than-a-year/ (last visited Oct. 30, 2026).

[27] Kathryn Palmer, *'PAY OR LEAK': Hackers Target Big Higher Ed Vendor*, Inside Higher Ed (May 5, 2026), https://www.insidehighered.com/news/tech-innovation/administrative-tech/2026/05/05/pay-or-leak-hackers-target-big-higher-ed-vendor (last visited Oct. 30, 2026).

[28] Zack Whittaker, *Instructure Strikes Deal with Hackers Who Breached It Twice*,

resulting multidistrict litigation allege that the threat actor gained access using compromised credentials and that the breach could have been prevented had PowerSchool required multi-factor authentication.[29]

46. Additionally, ShinyHunters recently exfiltrated data from Infinite Campus—another popular SIS used by K-12 schools—in March 2026.[30]

47. Instructure, Inc., which operates the Canvas learning management platform used in K-12 schools and universities, suffered a nationwide outage and was inaccessible due to a security incident in May 2026.[31] The cybercriminal group ShinyHunters claimed to have exfiltrated 3.65 terabytes of data belonging to 275 million students and educators.[32]

48. Instructure had also been targeted by ShinyHunters in September 2025, when ShinyHunters "used social engineering to access Instructure's Salesforce instance."[33]

49. According to the Consumer Financial Protection Bureau, the number of data breach and identity theft complaints it received grew from 14,319 in 2020 to 32,469 in 2022.[34] It is well known among companies that PII like Social Security numbers and financial information is valuable and frequently targeted by criminals.

---

TechCrunch (May 12, 2026), https://techcrunch.com/2026/05/12/instructure-strikes-deal-with-hackers-who-breached-it-twice/ (last visited Oct. 30, 2026).

[29] *See* Consol. Individual Users Class Action Compl., *In re PowerSchool Holdings, Inc. & PowerSchool Grp., LLC Customer Sec. Breach Litig.*, No. 3:25-md-03149-AJB-DDL (S.D. Cal. Aug. 11, 2025), Dkt. No. 259.

[30] Bill Toulas, *Infinite Campus Warns of Breach After ShinyHunters Claims Data Theft*, Bleeping Computer (Mar. 24, 2026), https://www.bleepingcomputer.com/news/security/infinite-campus-warns-of-breach-after-shinyhunters-claims-data-theft/ (last visited Oct. 30, 2026).

[31] *See* Consol. Class Action Compl. (Track 1), *In re Instructure Data Breach Litig.*, No. 2:26-cv-00374-RJS-CMR (D. Utah Oct. 8, 2026), Dkt. No. 180.

[32] Marcus Chen, *Instructure Canvas Breach: 275M Records Claimed*, Tech Insider (Aug. 8, 2026), https://tech-insider.org/instructure-canvas-shinyhunters-breach-2026/ (last visited Oct. 30, 2026).

[33] Yair Cohen, *The Instructure Breach Was Salesforce. Again. Here's the Governance Problem Nobody Is Talking About*, Sentra (May 7, 2026), https://www.sentra.io/blog/the-instructure-breach-was-salesforce-again-heres-the-governance-problem-nobody-is-talking-about (last visited Oct. 30, 2026).

[34] *See Compromised: Why Experts Say Data Breaches Are on the Rise,* NBC 6 South Florida (Nov. 16, 2024), https://www.nbcmiami.com/responds/compromised-why-experts-say-data-breaches-are-on-the-rise/3473306/ (last visited Oct. 30, 2026).

50. The Federal Trade Commission (FTC) has warned consumers that identity thieves use PII to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[35]

51. In April 2020, ZDNet reported that "ransomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[36]

52. ETS's security obligations were especially important due to the substantial increase of cyberattacks and data breaches in recent years.

53. ETS knew or should have known that as a major educational testing company, it is a prime target of ransomware actors. ETS also knew or should have known that there was a foreseeable risk that Plaintiff's minor children and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

### D. ETS Breached Its Duties to Plaintiff and Class Members and Failed to Comply with Regulatory Requirements and Industry Practices

54. Because ETS was entrusted with PII at all relevant time, ETS owed Plaintiff and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred. It also owed a duty to promptly detect and thwart attempts at unauthorized access to their networks and systems. And ETS owed a further duty to safeguard PII because it was on notice that it was handling highly valuable data and knew there was a significant risk it

---

[35] *See What to Know About Identity Theft*, F.T.C. (Sept. 2024), https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Oct. 30, 2026).

[36] Catalin Cimpanu, *Ransomware Mentioned in 1,000+ SEC Filings over the Past Year*, ZDNET (Apr. 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited Oct. 30, 2026).

would be targeted by cybercriminals. Furthermore, ETS knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

55. Security standards commonly accepted among businesses like ETS that store PII include, without limitation:

i. Maintaining a secure firewall configuration;

ii. Monitoring for suspicious or irregular traffic to servers or networks;

iii. Monitoring for suspicious credentials used to access servers or networks;

iv. Monitoring for suspicious or irregular activity by known users;

v. Monitoring for suspicious or unknown users;

vi. Monitoring for suspicious or irregular server requests;

vii. Monitoring for server requests for PII;

viii. Monitoring for server requests from VPNs; and

ix. Monitoring for server requests for Tor exit nodes.

56. The FTC publishes guides for businesses for cybersecurity[37] and protection of PII that includes basic security standards applicable to all types of businesses.[38]

57. The FTC recommends that businesses:

i. Identify all connections to the computers where sensitive information is stored.

ii. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

iii. Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

---

[37] *Start with Security: A Guide for Business*, F.T.C. (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[38] *Protecting Personal Information: A Guide for Business*, F.T.C. (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf.

iv. Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

v. Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

vi. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

vii. Determine whether a firewall should be installed where the business's network connects to the internet. A firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system

> to an unknown user. If large amounts of information are being transmitted from a business's network, the transmission should be investigated to make sure it is authorized.[39]

58. As described further below, ETS owed a duty to safeguard PII under the Federal Trade Commission Act (the FTC Act) to ensure that all information it received, maintained, and stored was secure. 15 U.S.C. § 45. Congress enacted this statute to protect Plaintiff and the Class Members from the type of conduct in which ETS engaged, and the resulting harms ETS proximately caused Plaintiff and the Class Members.

59. Under the FTC Act, ETS had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff's minor children and Class Members.

60. ETS breached its duty to exercise reasonable care in protecting Plaintiff's minor children and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's minor children and Class Members' sensitive personal information, failing to encrypt or anonymize PII within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's minor children and Class Members' confidential and private information. Additionally, ETS breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, ETS also violated its duties under the FTC Act.

61. ETS failed to prevent the Data Breach. Had ETS properly maintained and adequately protected its systems, servers, and networks, the Data Breach would not have occurred.

62. The law also imposes an affirmative duty on ETS to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that it can take

[39] *See id.*; *see also Start with Security*, *supra* note 37.

appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. ETS further breached its duties by failing to provide timely notice of the Data Breach to Plaintiff and Class Members. In so doing, ETS actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff, her minor children, and Class Members.

63. The Family Educational Rights and Privacy Act (FERPA) reflects the longstanding federal standard that student education records and personally identifiable information contained in those records are private and confidential. *See* 20 U.S.C. § 1232g(b)(1); 34 C.F.R. Part 99.

64. FERPA applies to ETS because it operates as a third-party service provider to CDE and maintains student information on its behalf, placing ETS within FERPA's framework for outside parties performing institutional services or functions for schools. *See* 20 U.S.C. § 1232g(b)(1); 34 C.F.R. Part 99.

65. Under FERPA, an "education record" includes records, files, documents, and other materials that contain information directly related to a student that are maintained by an educational agency or institution or by a person acting for such agency or institution. 20 U.S.C. § 1232g(a)(4)(A).

66. FERPA also protects "personally identifiable information" from education records. The regulations define "personally identifiable information" to include, among other things, a student's name, student identification number, and other information that can be used to identify a student. 34 C.F.R. § 99.3.

67. FERPA generally prohibits educational agencies and institutions from having a policy or practice of releasing education records or personally identifiable information contained in education records without written consent, subject to limited exceptions. 20 U.S.C. § 1232g(b)(1); 34 C.F.R. § 99.30.

68. One such exception permits disclosure to contractors, consultants, volunteers, or other outside parties performing institutional services or functions, but only when those

parties are subject to FERPA's use and redisclosure restrictions. 34 C.F.R. §§ 99.31(a)(1)(i)(B), 99.33(a).

69. Thus, under FERPA and its regulations, education-related personal information entrusted to service providers like ETS must be treated as confidential and protected from unauthorized access, disclosure, and misuse.

70. ETS knew or should have known that the information it maintained included confidential education-related information subject to heightened privacy expectations.

**E. Plaintiff's Experience**

71. Plaintiff's minor children attend schools in the San Diego Unified School District and provided their data to ETS because of required state educational assessments.

72. On or around October 19, 2026, Plaintiff received notice of the Data Breach via email.[40]

73. Plaintiff trusted that ETS would use reasonable measures to protect her minor children's data according to state and federal law and would timely and adequately notify her in the event of a data breach.

74. Plaintiff and her minor children J.A., L.A., and N.A. provided ETS with their most sensitive personal information, which was exfiltrated in the Data Breach.

75. When providing her minor children J.A., L.A., and N.A.'s PII, Plaintiff at all times expected the information to be kept confidential. Plaintiff likewise expected any PII provided to ETS would be kept strictly confidential.

76. As a proximate result of the Data Breach, Plaintiff will spend time for the foreseeable future and beyond dealing with its consequences and self-monitoring her and her children's accounts and credit reports to monitor potentially suspicious and fraudulent activity. This precious time that she would otherwise spend educating and nurturing her children will be lost forever and cannot be recaptured.

77. As a result of the Data Breach, Plaintiff, on behalf of her minor children J.A., L.A., and N.A., has experienced stress, anxiety, and concern due to the loss of privacy and

[40] *See* Exhibit A.

concern over the impact of cybercriminals accessing and misusing her minor children's sensitive PII. Plaintiff understandably fears that criminals will use her minor children's Sensitive Information to commit identity theft. This risk will follow Plaintiff's minor children for their lifetime. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

78. Plaintiff's minor children suffered actual injuries in the form of damages to and diminution in the value of their PII—a form of intangible property that was entrusted to ETS—which was compromised in and as a proximate result of the Data Breach.

79. Plaintiff's minor children have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from their PII being obtained by unauthorized third parties and possibly cybercriminals.

80. Plaintiff and her minor children have a continuing interest in ensuring that their PII, which remains within ETS's possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

81. ETS deprived Plaintiff of the earliest opportunity to guard herself and her minor children against the Data Breach's harmful effects by failing to promptly notify her.

### F. Plaintiff and the Class Suffered Actual and Impending Injuries Resulting from the Data Breach

82. As a proximate result of ETS's completely unreasonable security practices, identity thieves now possess the sensitive PII of Plaintiff and the Class. That information is extraordinarily valuable on the black market and incurs direct costs to Plaintiff and the Class. On the dark web—an underground Internet black market—criminals openly buy and sell stolen PII to create "identity kits" worth up to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file

false insurance claims or tax returns, or rack up other kinds of expenses.[41] And, "[t]he damage to affected [persons] may never be undone."[42]

83. This is especially pernicious for minors, who would be unable to detect identity theft occurring in their names until they apply for a credit card, loan, job, college, or housing.

84. According to Experian Vice President Michael Bruemmer, 25% of minors will have their identities stolen before they turn 18.[43]

85. The Data Breach exposed categories of information that carry a serious risk of stigma, discrimination, harassment, and exploitation if disclosed, including students' disability status and primary disability type, Section 504 status, country of origin, English-learner status, and eligibility for programs serving homeless, migrant, and low-income students. This information can be used to target vulnerable children and families, including through extortion. Its exposure is an invasion of privacy in and of itself, and the harm is permanent: unlike a credit card number, a child's disability history or country of origin cannot be canceled or reissued.

86. Because of the Data Breach, Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow money, obtain credit, or open bank accounts. Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to guard against these consequences substantially impairs Class Members' ability to obtain additional credit. In fact, many experts advise

---

[41] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity*, Forbes (updated Dec. 10, 2021), https://www.forbes.com/sites/forbestechcouncil/2021/06/07/increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh=ca928c05650d. (last visited Oct. 30, 2026).

[42] *Id.*

[43] Steve Weisman, *The Unknown Danger of Child Identity Theft*, Forbes (updated Sept. 20, 2024), https://www.forbes.com/sites/steveweisman/2024/09/13/the-unknown-danger-of-child-identity-theft/ (last visited Oct. 30, 2026).

victims to place a freeze on all credit accounts, making it impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car or home purchase.

87. Impacted minors will have to manage their own freezes, reports, and ongoing monitoring duties for the rest of their lives.

88. Injury has already occurred. According to CDE, an unauthorized party accessed and copied the files containing Plaintiff's minor children and Class Members' PII. That unauthorized intrusion into, and taking of, private records concerning Plaintiff's minor children and Class Members— including information about their disabilities, their families' economic circumstances, and their housing status—is closely analogous to the harm long recognized at common law from intrusion upon seclusion, which protects against the highly offensive intrusion into a person's private affairs and concerns.

89. As a direct and proximate result of ETS's conduct, Plaintiff, her minor children, and Class Members have suffered and will continue to suffer injury, including: (i) the unauthorized access, exfiltration, and disclosure of their PII; (ii) the loss of privacy and confidentiality in that information; (iii) a substantial and imminent risk of identity theft, fraud, and targeted phishing; (iv) out-of-pocket costs and lost time spent monitoring accounts, placing credit freezes, reviewing communications for fraud, and otherwise mitigating the effects of the Data Breach; (v) emotional distress, anxiety, and fear; and (vi) the continued risk to their PII, which remains in ETS's possession and is subject to further unauthorized disclosure absent adequate protective measures.

90. Plaintiff, on behalf of her minor children J.A., L.A., and N.A., and Class Members have a continuing interest in ensuring that their PII, which upon information and belief remains in ETS's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

91. Under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and where applicable, 23(c)(4), Plaintiff, on behalf of her minor children J.A., L.A., and N.A., seeks certification of the following Nationwide Class and California Subclass (together, the Class):

**Nationwide Class:** All persons in the United States whose PII was accessed by and disclosed in the Data Breach to unauthorized persons. (and each person a Class Member).

**California Subclass:** All persons in the State of California whose PII was accessed by and disclosed in the Data Breach to unauthorized persons.

92. The Class excludes governmental entities, ETS, any entity in which ETS has a controlling interest, and ETS's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. The Class also excludes are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

93. This action is brought and may be properly maintained as a class action under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

94. *Numerosity Under Rule 23(a)(1)*. The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all members of the Class in a single action will provide substantial benefits to the parties and the Court. Upon information and belief, millions of individuals were impacted by the Data Breach. The Class is sufficiently numerous to warrant certification.

95. *Commonality Under Rule 23(a)(2)*. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Class. These common questions that do not vary among members of the Class and that may be determined without reference to any Class Member's individual circumstances, include, but are not limited to:

i. Whether ETS knew or should have known that its computer systems and networks were vulnerable to unauthorized third-party access or a cyberattack;

ii. Whether ETS failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that its computer systems and networks were protected;

iii. Whether ETS failed to take available steps to prevent and stop the Data Breach from occurring;

iv. Whether ETS failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

v. Whether ETS owed a legal duty to Plaintiff and Class Members to protect their PII;

vi. Whether ETS breached any duty to protect the PII of Plaintiff and Class Members by failing to exercise due care in protecting their sensitive and private information;

vii. Whether ETS's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiff's minor children and Class Members.

viii. Whether ETS provided timely, accurate, and sufficient notice of the Data Breach to Plaintiff and the Class Members;

ix. Whether ETS's conduct violated the California Constitution, CCRA, CCPA, and the UCL;

x. Whether Plaintiff and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

xi. Whether Plaintiff and Class Members are entitled to injunctive or equitable relief, including restitution.

96. *Typicality Under Rule 23(a)(3)*. Plaintiff's claims are typical of the claims of the Class. Plaintiff's minor children had their PII compromised in the Data Breach. ETS's uniformly unlawful course of conduct injured Plaintiff and Class Members.

97. *Adequacy of Representation Under Rule 23(a)(4)*. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Plaintiff and her counsel intend to vigorously prosecute this action for the Class's benefit and have the resources to do so. Plaintiff and her counsel have no interests adverse to other members of the Class.

98. *Predominance and Superiority Under Rule 23(b)(3)*. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class Member's claim is impracticable. The damages, harm, and losses suffered by the individual Class Members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by ETS's wrongful conduct. Even if each Class Member could afford individual litigation, the court system could not. It would be unduly burdensome if tens of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

99. Based on the foregoing, class treatment is appropriate under Rule 23.

## FIRST CAUSE OF ACTION
**Negligence**
***(On Behalf of Plaintiff and the Nationwide Class)***

100. Plaintiff, on behalf of her minor children J.A., L.A., and N.A. and others similarly situated, incorporates the above allegations as if fully set forth herein.

101. Because ETS was entrusted with such PII at all times herein relevant, it owed to Plaintiff and the Class a duty to exercise commercially reasonable methods and care in

handling, using, maintaining, storing, and safeguarding the PII in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to their networks and systems. This duty arose independently from any contract.

102. ETS knew, or should have known, of the risks inherent in collecting and storing massive amounts of PII, including the importance of adequate data security and the high frequency of ransomware attacks and well-publicized data breaches. ETS owed a duty of care to Plaintiff and Class Members because it was foreseeable that ETS's failure to adequately safeguard its PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that sensitive information.

103. ETS acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's minor children and the Class's PII by failing to limit access to this information to unauthorized third parties and by not properly supervising both the way the PII was stored, used, and exchanged, and those in ETS's employ responsible for such tasks.

104. ETS owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. ETS also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and circumstances of the Data Breach. This duty is required and necessary for Plaintiff and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

105. ETS also had a common law duty to prevent foreseeable harm to others. ETS had full knowledge of the sensitivity and high value of the PII that it stored and the types of foreseeable harm and injury-in-fact that Plaintiff and Class Members could and would suffer if that PII were wrongfully disclosed, leaked, accessed, or exfiltrated. ETS's conduct created a foreseeable and unreasonable risk of harm to Plaintiff's minor children

and Class Members, who were the foreseeable victims of ETS's inadequate data security practices.

106. ETS violated its duty to implement and maintain reasonable security procedures and practices, including through its failure to adequately restrict access to its systems that held millions of individuals' PII or encrypt or anonymize such data. ETS's duty included, among other things, designing, maintaining, and testing its information security controls to ensure that PII in its possession was adequately secured by, for example, encrypting or anonymizing sensitive personal information, installing intrusion detection and deterrent systems and monitoring mechanisms, and using access controls to limit access to sensitive data.

107. As described above, ETS's duty of care also arose under the FTC Act, under which ETS had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII of Plaintiff's minor children and Class Members.

108. The FTC Act was enacted to protect Plaintiff's minor children and the Class Members from the type of wrongful conduct in which ETS engaged.

109. ETS's violation of the FTC Act constitutes negligence *per se* for purposes of establishing the duty and breach elements of Plaintiff's negligence claim. Those statutes were designed to protect a group to which Plaintiff belongs and to prevent the types of harm that resulted from the Data Breach.

110. ETS breached its duty to exercise reasonable care in protecting Plaintiff's minor children and Class Members' PII by failing to implement and maintain adequate data security measures to safeguard Plaintiff's minor children and Class Members' sensitive personal information, failing to encrypt or anonymize PII within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII no longer necessary for its provision of services to its clients and customers, allowing unmonitored and unrestricted access to unsecured PII, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiff's minor children and Class Members' confidential and private information.

ETS further breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, ETS also violated its duties under the FTC Act.

111. As outlined above, ETS's duty of care also arose under FERPA. 20 U.S.C. § 1232g(a)(4)(A); 34 C.F.R. §§ 99.31(a)(1)(i)(B), 99.33(a). As a service provider maintaining data for CDE and California schools, ETS acted as a person or outside party performing institutional services or functions for FERPA-covered schools.

112. ETS therefore knew or should have known that the student information it maintained was confidential education-related information subject to heightened privacy expectations.

113. ETS violated the duties and standards reflected in FERPA's privacy framework by failing to reasonably protect Plaintiff's minor children and Class Members' education-related private information from unauthorized access and disclosure.

114. The law imposes an affirmative duty on ETS to timely disclose the unauthorized access and theft of PII to Plaintiff and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. ETS further breached its duties by failing to provide timely notice of the Data Breach to Plaintiff and Class Members. In so doing, ETS actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiff and Class Members. Timely disclosure was necessary so that Plaintiff, on behalf of her minor children, and Class Members could, among other things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud alerts on a quarterly basis; (v) closely monitor loan data and public records; and (vi) take other meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other harms.

115. Plaintiff's minor children and Class Members had no ability to protect their PII once it was in ETS's possession and control. ETS was in an exclusive position to

protect against the harm suffered by Plaintiff, her minor children, and Class Members as a result of the Data Breach.

116. But for ETS's breach of duty to adequately protect Class Members' PII, Class Members' PII would not have been stolen. As a result of ETS's negligence, Plaintiff, her minor children, and Class Members suffered and will continue to suffer the various types of damages alleged herein. There is a temporal and close causal connection between ETS's failure to implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiff, her minor children, and Class Members.

117. As a direct and traceable result of ETS's negligence, Plaintiff's minor children and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiff's minor children and the Class include, without limitation: (i) loss of the opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to ETS; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in ETS's possession and is subject to further breaches so long as ETS fails to undertake appropriate and adequate measures to protect the personal information in its possession; and (viii) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

118. ETS's negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme

sensitivity of the private information under ETS's care, and its failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

119. Plaintiff and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiff and Class Members are also entitled to the injunctive relief sought herein.

## SECOND CAUSE OF ACTION
**Breach of Implied Contract**
***(On Behalf of Plaintiff and the Nationwide Class)***

120. Plaintiff, on behalf of her minor children J.A., L.A., and N.A. and all others similarly situated, incorporates the above allegations as if fully set forth herein.

121. Plaintiff and Class Members entered into an implied contract with ETS when they entrusted ETS with their PII as a precondition for participating in state-mandated educational assessments.

122. As part of these transactions, ETS agreed to safeguard and protect the PII of Plaintiff's minor children and Class Members and to timely and accurately notify them if their PII was breached or compromised.

123. ETS acquired, stored, and maintained the PII of Plaintiff's minor children and the Class.

124. Plaintiff's minor children and Class Members were required to provide, or authorize the transfer of, their private information in order for ETS to provide its services.

125. ETS solicited, offered, and invited Class Members to provide their private information as part of its regular business practices. Plaintiff's minor children and Class Members accepted ETS's offer and provided their PII to ETS.

126. When Plaintiff's minor children and Class Members provided their PII to ETS, they entered into implied contracts with ETS and intended and understood that PII would be adequately safeguarded as part of that service.

127. ETS's implied promise of confidentiality to Plaintiff and Class Members includes consideration beyond those pre-existing general duties owed under the FTC Act,

or other state or federal regulations. The additional consideration included implied promises to take adequate steps to comply with specific industry data security standards and FTC guidelines on data security.

128. Plaintiff and Class Members provided ETS with their PII. In exchange, ETS's implied promises include but are not limited to: (a) taking steps to ensure that any agents who are granted access to PII also protect the confidentiality of that data; (b) restricting access to qualified and trained agents; (c) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (d) applying or requiring proper encryption; (e) multifactor authentication for access; (f) protecting Plaintiff's minor children and Class Members' PII in compliance with federal and state laws and regulations and industry standards; and (g) other steps to protect against foreseeable data breaches.

129. ETS's implied promises to safeguard Plaintiff's minor children and Class Members' PII are evidenced by representations on ETS's website. The mutual understanding and intent of Plaintiff and Class Members on the one hand, and ETS on the other, is further demonstrated by their conduct and course of dealing.

130. Plaintiff, her minor children, and Class Members believed that ETS would use the monies obtained from the benefits derived from the PII they provided to fund proper and reasonable data security practices.

131. Plaintiff's minor children and the Class Members would not have entrusted their PII to ETS in the absence of such an implied contract. Had ETS disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff's minor children and the other Class Members would not have provided their PII to ETS.

132. ETS recognized that Plaintiff's minor children and Class Members' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff's minor children and the other Class Members.

133. Plaintiff, her minor children, and the Class Members fully and adequately performed their obligations under the implied contracts with ETS.

134. ETS breached the implied contracts it made with students by failing to take reasonable measures to safeguard their PII as described herein, as well as by failing to provide accurate, adequate, and timely notice to them that their PII was compromised as a result of the Data Breach.

135. As a direct and proximate result of ETS's wrongful conduct, Plaintiff, her minor children, and the other Class Members suffered and will continue to suffer damages from: (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) the loss of the confidentiality of the stolen PII; (c) the illegal sale of the compromised data on the dark we; (d) lost work time; and (e) other economic and non-economic harms.

136. Plaintiff and Class Members are also entitled to injunctive relief requiring ETS to strengthen its data security systems, submit to future audits of those systems, and provide adequate long-term credit monitoring and identity theft protection services to all persons affected by the Data Breach.

## THIRD CAUSE OF ACTION
**Injunctive/Declaratory Relief**
***(On Behalf of Plaintiff and the Nationwide Class)***

137. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

138. ETS owes a duty of care to Plaintiff and Class Members, which required ETS to adequately monitor and safeguard Plaintiff's minor children and Class Members' PII.

139. ETS and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII belonging to Plaintiff's minor children and Class Members.

140. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's minor children and Class Members' PII and whether ETS is currently maintaining data security measures adequate to protect Plaintiff's minor children and Class Members from further data breaches that compromise their PII. Plaintiff alleges that ETS's data security measures remain inadequate. Furthermore, Plaintiff's minor children and the Class continue to suffer injury as a result of the compromise of their PII, and the risk remains that further compromises of their private information will occur in the future.

141. Through its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

i. ETS owes a legal duty to adequately secure the PII of Plaintiff's minor children and the Class within its care, custody, and control under the common law, FERPA, and Section 5 of FTC Act;

ii. ETS breached its duty to Plaintiff and the Class by allowing the Data Breach to occur;

iii. ETS's existing data monitoring measures do not comply with its obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII of Plaintiff's minor children and the Class within ETS's custody, care, and control; and

iv. ETS's ongoing breaches of said duties continue to cause harm to Plaintiff, her minor children, and the Class.

142. If an injunction is not issued, Plaintiff's minor children and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another data breach or cybersecurity incident occurs, Plaintiff's minor children and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiff's minor children and the Class for the serious risks of future harm.

143. The hardship to Plaintiff's minor children and the Class if an injunction does not issue exceeds the hardship to ETS if an injunction is issued. Plaintiff's minor children and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of ETS's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and ETS has a pre-existing legal obligation to employ such measures.

144. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach or cybersecurity incident, thus preventing future injury to Plaintiff's minor children, Class Members, and other persons whose PII would be further compromised.

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy**
**(Cal. Const. art. 1, § 1)**
***(On Behalf of Plaintiff and the California Subclass)***

145. Plaintiff, on behalf of her minor children J.A., L.A., and N.A. and the California Subclass, incorporates the above allegations as if fully set forth herein.

146. Plaintiff and California Subclass Members have an interest in: (1) precluding the dissemination and/or misuse of their PII; and (2) making personal decisions and/or conducting personal activities without observation, intrusion, or interference, including, but not limited to, the right to engage in educational activities and participate in state assessments without the risk of their data being exfiltrated.

147. Plaintiff and California Subclass Members had a reasonable expectation that their communications, identity, and other data would remain confidential and that ETS would keep its platform secure.

148. By failing to secure Plaintiff's minor children and California Subclass Members' personal data, ETS intentionally invaded Plaintiff and California Subclass Members' right to privacy under the California Constitution.

149. This invasion of privacy is serious in nature, scope, and impact because it relates to students' Private Information. And it constitutes an egregious breach of the societal norms underlying the right of privacy.

150. As a result of ETS's actions, Plaintiff, her minor children, and California Subclass Members have suffered harm and injury, including but not limited to invasion of their privacy rights.

151. Plaintiff, her minor children, and California Subclass Members have been damaged as a direct and proximate result of ETS's invasion of privacy and are entitled to just compensation, including monetary damages.

152. Plaintiff, her minor children, and California Subclass Members seek appropriate relief for this injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests.

153. Plaintiff, her minor children, and California Subclass Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of ETS's actions, directed at injuring Plaintiff and California Subclass Members in conscious disregard of their rights.

154. Such damages are needed to deter ETS from engaging in such conduct in the future. Plaintiff also seeks other such relief as the Court may deem just and proper.

## FIFTH CAUSE OF ACTION
**Violation of the California Customer Records Act**
**Cal. Civ. Code §§ 1798.80–1798.84.1.**
***(On Behalf of Plaintiff and the California Subclass)***

155. Plaintiff, on behalf of her minor children J.A., L.A., and N.A. and the California Subclass, incorporates the above allegations as if fully set forth herein.

156. "[T]o ensure that personal information about California residents is protected," the California legislature enacted the CCRA, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the

nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5(a), (b).

157. ETS is a business that owns, maintains, or licenses personal information about Plaintiff's minor children and California Subclass Members. Cal. Civ. Code § 1798.81.5(b).

158. ETS violated California Civil Code section 1798.81.5 by failing to implement reasonable measures to protect California Subclass Members' PII.

159. Businesses that own or license computerized data that includes personal information are required to notify California residents when their PII has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach within 30 calendar days of discovery. Cal. Civ. Code § 1798.82(a)(2)(A). Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach." Cal. Civ. Code § 1798.82(d)(2)(B).

160. ETS is a business that owns or licenses computerized data that includes personal information as defined by California Civil Code section 1798.82.

161. Plaintiff's minor children and California Subclass Members' PII includes personal information identified in California Civil Code section 1798.82(h), including their names and medical information in the form of disability status and primary disability type, and is thereby covered by section 1798.82.

162. Plaintiff and the California Subclass Members are "customers" within the meaning of California Civil Code section 1798.80(c), as their personal information was provided to ETS for the purpose of utilizing ETS's services.

163. The Data Breach constituted a breach of ETS's security systems, networks, and servers.

164. Because ETS reasonably believed that Plaintiff's minor children and California Subclass Members' PII was acquired by unauthorized persons during the Data

Breach, ETS had an obligation to disclose the data breach in a timely and accurate fashion as mandated by California Civil Code section 1798.82.

165. To date, although Plaintiff received notification about the Data Breach from San Diego Unified School District, she has not received any such notification from ETS. Upon information and belief, no law enforcement agency instructed ETS that notification to California Subclass Members would impede an investigation. ETS thus unreasonably delayed informing Plaintiff and the California Subclass Members about the breach of security of their PII after it knew the breach had occurred in violation of California Civil Code section 1798.82.

166. The CCRA provides that "[a]ny waiver of a provision of this title is contrary to public policy and is void and unenforceable" (Cal. Civ. Code § 1798.84(a)); "[a]ny customer injured by a violation of this title may institute a civil action to recover damages" (*id.* § 1798.84(b)); and "[a]ny business that violates, proposed to violate, or has violated this title may be enjoined" (*id.* § 1798.84(e)).

167. As a direct and proximate result of ETS's violations of California Civil Code sections 1798.81.5 and 1798.82, Plaintiff, her minor children, and California Subclass Members were (and continue to be) injured and suffered (and will continue to suffer) damages, as described above.

168. Plaintiff and California Subclass Members seek relief under California Civil Code section 1798.84, including, but not limited to, actual damages, any applicable statutory damages, and equitable and injunctive relief.

## SIXTH CAUSE OF ACTION
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code §§ 1798.100–1798.199.100**
***(On Behalf of Plaintiff and the California Subclass)***

169. Plaintiff, on behalf of her minor children J.A., L.A., and N.A., and the California Subclass, incorporates the above allegations as if fully set forth herein.

170. Under the CCPA, any consumer whose nonencrypted or nonredacted personal information (as defined by Civil Code section 1798.81.5(d)(1)(A)) is subject to an

"unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action" for statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper. Cal. Civ. Code § 1798.150(a)(1).

171. Plaintiff is a consumer and California resident as defined by California Civil Code section 1798.140(i).

172. ETS is a "business" under Civil Code section 1798.140(d)(1) because it "collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information."[44]

173. Plaintiff's minor children and California Subclass Members' personal information, as defined by Civil Code section 1798.140(v)(1), was subject to unauthorized access and exfiltration, theft, or disclosure. The Data Breach exposed, without limitation, names, addresses, statewide student identifiers, local student identifiers, as well as disability / Section 504 status, testing accommodations, educational program eligibility status, and English Language proficiency information. This personal information may include characteristics of protected classifications under California or federal law under section 1798.140(v)(1)(C); education information under section 1798.140(v)(1)(J); and "Sensitive Personal Information" like gender, race, ethnicity, and country of origin under section 1798.140(ae)(1)(D).

174. ETS maintained Plaintiff's minor children and California Subclass Members' PII in a form that allowed criminals to access it.

175. The Data Breach occurred as a result of ETS's failure to implement and maintain reasonable security procedures and practices for protecting the exposed information given its nature. ETS failed to monitor its systems to identify suspicious

[44] *See K-12 Student Data Privacy Statement*, *supra* note 13.

activity and allowed unauthorized access to Plaintiff's minor children and California Subclass Members' PII.

176. Consistent with California Civil Code section 1798.150(b), Plaintiff, on behalf of her minor children, will provide written notice to ETS identifying the CCPA provisions that ETS violated.

177. On behalf of California Subclass Members, Plaintiff presently seeks actual pecuniary damages and injunctive relief in the form of an order enjoining ETS from continuing to violate the CCPA. Unless and until ETS is restrained by order of the Court, its wrongful conduct will continue to cause irreparable injury to Plaintiff, her minor children, and the California Subclass.

178. If ETS fails to timely rectify or otherwise cure the CCPA violations described herein, individually and on behalf of the California Subclass, Plaintiff reserves her right to amend this complaint to seek statutory damages and any other relief the Court deems proper as a result of ETS's CCPA violations under California Civil Code section 1798.150(a).

## SEVENTH CAUSE OF ACTION
**Violation of California's Unfair Competition Law**
**Bus. & Prof. Code § 17200–17210**
***(On Behalf of Plaintiff and the California Subclass)***

179. Plaintiff, on behalf of her minor children J.A., L.A., and N.A. and the California Subclass, incorporates the above allegations as if fully set forth herein.

180. Plaintiff pleads this claim for equitable relief, including restitution and injunctive relief, in the alternative to their claims for damages.

181. The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

182. ETS's actions as alleged herein in this Class Action Complaint constitute an "unlawful" practice as encompassed by the UCL because ETS's actions: (a) violated the CCRA, as discussed further in Plaintiff's fifth cause of action; (b) violated the CCPA, as discussed further in Plaintiff's sixth cause of action, (c) constituted negligence, as

discussed further in Plaintiff's first cause of action; and (d) violated federal law and regulations, including the FTC Act and FERPA.

183. ETS's actions as alleged in this Class Action Complaint also constitute an "unfair" practice under the UCL because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious. The harm caused by ETS's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to the California Subclass, including Plaintiff and her minor children. There were ample reasonably available alternatives that would have furthered ETS's legitimate business practices, including using industry-standard technologies to protect data (e.g., two-factor authorization, effective encryption and anonymization, compartmentalization of sensitive data, software patches, limiting how much data any user may access, and the purging of data no longer necessary for ETS's services). ETS also unreasonably delayed in notifying Plaintiff and the California Subclass Members regarding the unauthorized release and disclosure of their PII.

184. ETS's conduct was also "unfair" under the UCL because it violated the legislatively declared policies reflected by California's strong data-breach and online-privacy laws, including the CCRA, the CCPA, and the California constitutional right to privacy, as described above.

185. ETS's conduct also is deceptive in violation of the UCL. ETS's fraudulent business acts and practices include:

i. Failing to adequately secure the personal information of Plaintiff's minor children and California Subclass Members from disclosure to unauthorized third parties or for improper purposes;

ii. Enabling the disclosure of personal and sensitive facts about Plaintiff, her minor children, and California Subclass Members in a manner highly offensive to a reasonable person;

iii. Enabling the disclosure of personal and sensitive facts about Plaintiff, her minor children, and California Subclass Members without their informed, voluntary, affirmative, and clear consent;

iv. Omitting, suppressing, and concealing the material fact that ETS did not reasonably or adequately secure Plaintiff, her minor children, and California Subclass Members' personal information.

186. ETS's omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of Plaintiff's minor children and California Subclass Members' personal information.

187. The harm from ETS's conduct was not reasonably avoidable by consumers. Plaintiff's minor children and California Subclass Members were required to provide their PII to participate in state-mandated student assessments. Plaintiff, her minor children, and California Subclass Members did not know of, and had no reasonable means of discovering, that their information would be exposed to hackers through inadequate data security measures.

188. There were reasonably available alternatives that would have furthered ETS's business interests of electronically transferring students' information while protecting PII.

189. A reasonable person would regard ETS's derelict data security and the Data Breach as important, material facts that could and should have been disclosed.

190. As a direct and proximate result of ETS's unlawful, unfair, and fraudulent conduct, Plaintiff and her minor children lost money or property because they sensitive personal information experienced a diminution of value and because they devoted additional time to monitoring their financial accounts for fraudulent activity. Plaintiff and her minor children face ongoing and impending damages related to theft of their PII.

191. ETS's wrongful practices constitute a continuing course of unfair competition because, on information and belief, ETS has failed to remedy its lax security practices. Plaintiff and the California Subclass seek equitable relief under California Business and

Professions Code section 17203 to end ETS's wrongful practices and require ETS to maintain adequate and reasonable security measures to protect the PII of Plaintiff, her minor children, and the California Subclass.

192. Plaintiff, her minor children, and California Subclass Members lack an adequate remedy at law because the injuries here include an imminent risk of identity theft and fraud that can never be fully remedied through damages, ongoing identity theft and fraud, as well as long term incalculable risk associated with medical fraud.

193. Further, if an injunction is not issued, Plaintiff, her minor children, and California Subclass Members will suffer irreparable injury. The risk of another such breach is real, immediate, and substantial. ETS has still not provided adequate information on the cause and scope of the Data Breach. Plaintiff, her minor children, and California Subclass Members lack an adequate remedy at law that will reasonably protect against the risk of a further breach.

194. Plaintiff and the California Subclass also seek an order requiring ETS to make full restitution of all monies it received through its wrongful conduct, along with all other relief permitted under the UCL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of her minor children J.A., L.A., and N.A. and the Class set forth herein, respectfully request the following relief:

A. Certifying this action as a class action under Federal rule of Civil Procedure 23 and appointing Plaintiff and her counsel to represent the Class;

B. Entering judgment for Plaintiff and the Class;

C. Granting permanent and appropriate injunctive relief to prohibit ETS from continuing to engage in the unlawful acts, omissions, and practices described herein and directing ETS to adequately safeguard the PII of Plaintiff and the Class by implementing improved security controls;

D. Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

E. Awarding Plaintiff and Class Members statutory or punitive damages as allowed by law in an amount to be determined at trial;

F. Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by ETS as a result of ETS's unlawful acts, omissions, and practices;

G. Awarding to Plaintiff and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H. Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I. Granting such further and other relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: November 3, 2026

By: Jenn French

Jenn French
Email: jenn@frenchlawapc.com

Amber L. Schubert, Cal. State Bar No. 278696
aschubert@awkolawllp.com
Sonum Dixit, Cal. State Bar No. 353395
sdixit@awkolawllp.com
**AWKO LAW LLP**
2193 Fillmore Street
San Francisco, California 94115
Telephone: 850.202.1010

*Attorneys for Plaintiff and the Putative Class*