UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M.A.,<br>Plaintiff,<br>v.<br>EDUCATIONAL TESTING SERVICE, et al.,<br>Defendants. | Case No.: 26-cv-06275-AJB-JLB<br>**ORDER DENYING PLAINTIFF J.M.A.'S MOTION TO PROCEED UNDER A PSEUDONYM**<br>(Doc. No. 4) |

Before the Court is Plaintiff J.M.A.'s Motion to Proceed Under a Pseudonym. (Doc. No. 4.) For the following reasons, the motion is **DENIED**.

## I. BACKGROUND

On November 3, 2026, Plaintiff J.M.A. initiated this action on behalf of her minor children J.A., L.A., and N.A. and a putative class. (Doc. No. 1.) J.M.A. alleges that her children and the putative class members were injured when "an unauthorized party used a compromised login credential to access [Defendant Educational Testing Service's secure file transfer protocol site] and copy files containing California student information at various times between May 22 and September 18, 2026." (*Id.* ¶¶ 5–6.) This action is one of at least nine putative class actions that seek a remedy for this data breach. *See* Joint Stipulation to Stay Defs.' Responsive Pleading Deadline Pending Potential Consolidation,

*R.C. v. Educ. Testing Serv.*, No. 1:26-cv-08661-KES-CDB (E.D. Cal. Nov. 12, 2026) (identifying cases).

Four days later, J.M.A. filed the present motion to proceed with this action anonymously. (Doc. No. 4.)

## II. LEGAL STANDARD

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Generally, a plaintiff's "use of [a] fictitious name[] runs afoul of the public's common law right of access to judicial proceedings[.]" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (citations omitted). Thus, Federal Rule of Civil Procedure 10(a) requires that the "title of the complaint must name all the parties," and Rule 17(a)(1) provides that an "action must be prosecuted in the name of the real party in interest."

The Ninth Circuit nevertheless allows "parties to proceed anonymously when special circumstances justify secrecy." *Advanced Textile*, 214 F.3d at 1067. Specifically, parties may use pseudonyms "in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. This may include situations: (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit an intention to engage in illegal conduct and risk criminal prosecution. *Id.*

District courts must balance five factors when considering whether to allow a party to proceed anonymously: "'(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such

[harm[1]],' (4) the prejudice to the opposing party, and (5) the public interest." *Doe v. Kamehameha Schools/Bernie Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010) (quoting *Advanced Textile*, 214 F.3d at 1068).

## III. DISCUSSION

J.M.A. contends that "all relevant factors weigh in favor of" the Court allowing J.M.A. to proceed under a pseudonym. (Doc. No. 4-1 at 3.) In particular, J.M.A. argues that "requiring her to disclose her identity would effectively do the same for her children." (*Id.* (quoting *Doe v. OpenAI Found.*, No. 26-cv-11781-AGT, 2026 WL 3139509, at *1 (N.D. Cal. Oct. 20, 2026)).) Further, J.M.A. claims that she "will need to disclose her children's demographic information and information regarding their medical conditions, including disability status, types, and accommodations" to conduct this litigation." (*Id.*) J.M.A. thus reasons that her "public identification will harm the privacy rights of her minor children, frustrate the privacy protections of [Federal Rule of Civil Procedure] 5.2, and potentially implicate a significant social stigma exposing her minor children to ridicule and public embarrassment." (*Id.* at 4.) J.M.A. adds that allowing her to proceed under a pseudonym would not prejudice Educational Testing Service and that "her and her children's privacy interests" significantly outweigh the public's interest in this litigation. (*Id.* at 4–5.)

J.M.A.'s arguments are unavailing.

Preliminarily, the relevant privacy interests at issue belong to J.M.A.'s minor children. J.M.A. brings this action "on behalf of her minor children" and seeks "to vindicate the privacy rights of her minor children J.A., L.A., and N.A. and millions of other public

---

[1] *Advanced Textile* identified these factors as relevant when "pseudonyms are used to shield the anonymous party *from retaliation*." 214 F.3d at 1068 (emphasis added). *Kamehameha Schools* expanded the applicability of these factors to situations in which "the opposing party has objected." 596 F.3d at 1042. Here, J.M.A. does not assert that either she or her minor children may be subject to retaliation (*see generally* Doc. No. 4-1), and the defendant has not appeared in this matter, much less had the opportunity to object to J.M.A.'s request to use a pseudonym. The Court consequently evaluates J.M.A.'s allegations of potential harm as opposed to a risk of retaliation.

and charter school students'." (Doc. No. 4-1 at 1–2.) J.M.A.'s passing reference to her own privacy interests is consequently irrelevant to the Court's analysis. (*See id.* at 4 ("the public's interest in learning J.M.A.'s real name is significantly outweighed by her . . . privacy interests").)

J.M.A. has not demonstrated that her minor children's privacy interests establish special circumstances that merit J.M.A. proceeding under a pseudonym. "In order to proceed anonymously, a plaintiff must show both (1) a fear of severe harm, *and* (2) that the fear of severe harm is reasonable." *Kamehameha Schools*, 596 F.3d at 1043.

J.M.A. identifies, at best, a speculative risk of harm. Again, J.M.A. claims that "requiring her to disclose her identity would effectively do the same for her children." (Doc. No. 4-1 at 2 (quoting *OpenAI Found.*, 2026 WL 3139509, at *1).) She then contends that, "[a]s part of this litigation, [she] will need to disclose her children's demographic information and information regarding their medical conditions, including disability status, types, and accommodations." (Doc. No. 4-1 at 2.) Thus, her "public identification will harm the privacy rights of her minor children . . . and potentially implicate a significant social stigma exposing her minor children to ridicule and public embarrassment." (*Id.* at 4.)

These allegations do not identify a "severe" harm. Under Ninth Circuit precedent, "physical harm presents the paradigmatic case for allowing anonymity." *Kamehameha Schools*, 596 F.3d at 1043. J.M.A. does not identify any risk of physical harm, much less *severe* physical harm. (*See generally* Doc. No. 4-1.)

Furthermore, J.M.A.'s allegations identify only a speculative risk of harm. In particular, J.M.A. relies on a chain of inferences to claim that her children could face "significant social stigma" that exposes "her minor children to ridicule and public embarrassment." (*Id.* at 4.) First, J.M.A. assumes that someone would find this litigation, take note of her name, and then take an additional step to identify her children. (*Id.* at 2.) The identification of J.M.A.'s children could then injure the children because J.M.A. will purportedly be required to "disclose her children's demographic information and information regarding their medical conditions" as a part of this litigation. (*Id.*) This would

allegedly harm the privacy rights of the children. (*Id.* at 4.) This may "potentially implicate a significant social stigma exposing her minor children to ridicule and public embarrassment." (*Id.*)

However, it is not clear that anyone would take all of these steps to expose J.M.A.'s minor children to ridicule and public embarrassment. Taking the chain of inferences in reverse, it is unclear from the information before the Court that the revelation of the minor children's demographic and medical information would expose the children to ridicule or public embarrassment. J.M.A. concedes as much by identifying this as a "potential[] implicat[ion]." (*Id.*)

It is also unclear that J.M.A. will be required to reveal the minor children's demographic and medical information as part of this litigation, contrary to J.M.A.'s contention. (*See id.* at 2.) As J.M.A. notes, the "central issue in this case is whether [Educational Testing Services] breached duties to putative class members to preserve the confidentiality of their [personally identifying information]." (Doc. No. 4-1 at 5.) This personally identifying information includes data such as:

> student names; dates of birth; residential addresses; schools; districts; grade levels; Statewide Student Identifiers (SSID); local student identifiers; demographic information, including gender, race or ethnicity, primary language, country of origin and English learner status; Disability and Section 504 status, testing accommodations, and primary disability type; eligibility status for the following programs: Title I, Part A; Title I, Part C; McKinney-Vento; and Military Connected Student; English language proficiency information and statewide assessment registration, participation, and results, where applicable.

(Doc. No. 1 ¶ 34; *see also* Doc. No. 4-1 at 3.) Notably, the Complaint does not delve into the substance of any of this information, nor does it allege that the substance—as opposed to the mere fact that the information was accessed—is material to this action. (*See generally* Doc. No. 1.)

This stands in sharp contrast to J.M.A.'s primary authority: *OpenAI*, 2026 WL 3139509. There, the plaintiff sued on behalf of her minor children, alleging "that

Defendants' chatbot 'coerces' children to share sensitive and personal details about themselves." *Id.* at *1. As part of the complaint, the plaintiff included portions of the "conversations" between her minor children and the defendants' chatbot. *See* Complaint ¶¶ 211–55, *Doe v. OpenAI Found.*, No. 3:26-cv-11781 (N.D. Cal. Oct. 13, 2026). The content of such conversations was key to the issues of "[w]hether OpenAI solicited data from children" and "[w]hether children provided data to OpenAI." *Id.* ¶ 411.b.–c. The court ultimately found that "the[se] conversations about minors' health and personal information . . . implicate[d] the need to 'preserve privacy in a matter of sensitive and highly personal nature.'" *OpenAI Found.*, 2026 WL 3139509, at *1.

Lastly, it is unclear that anyone who finds this case would use J.M.A.'s name to identify her children. It is even less apparent that someone would then connect the children to the currently unidentified demographic or medical information for the purpose of potentially exposing the children to ridicule or public embarrassment.

Under these circumstances, J.M.A.'s claims of potential harm to her minor children are speculative. J.M.A. consequently does not establish that her fear of harm to her minor children is reasonable. *See Kamehameha Schools*, 596 F.3d at 1044.[2]

In turn, the public's interest in this action outweighs the Ninth Circuit's three harm-related factors. *See Kamehameha Schools*, 596 F.3d at 1042 (quoting *Advanced Textile*, 214 F.3d at 1068). Even assuming that Educational Testing Service would not be

---

[2] The reasonableness of J.M.A.'s concerns is further undermined by the fact that J.M.A. is the only parent or guardian to seek leave to proceed under a pseudonym in the cases related to the data breach at issue. *See generally R.C. v. Educ. Testing Serv.*, No. 1:26-cv-08661-KES-CDB (E.D. Cal. filed Oct. 20, 2026); *K.J.K. v. Educ. Testing Serv.*, No. 4:26-cv-12217-HSG (N.D. Cal. filed Oct. 20, 2026); *S.R. v. Educ. Testing Serv.*, No. 26-cv-06003-AJB-AHG (S.D. Cal. filed Oct. 21, 2026); *O.G. v. Educ. Testing Serv.*, No. 2:26-cv-12478 (C.D. Cal. filed Oct. 26, 2026); *Shelmire v. Educ. Testing Serv.*, No. 8:26-cv-03344-FMO-DFM (C.D. Cal. filed Nov. 2, 2026). Two other cases have been filed by individuals whose data has been breached; neither individual has requested leave to proceed under a pseudonym. *See Williams v. Educ. Testing Serv.*, No. 2:26-cv-12855 (C.D. Cal. filed Nov. 3, 2025); *Wilson v. Cal. Dep't of Educ.*, No. 26CV026416 (Cal. Super. Ct. filed Nov. 2, 2026).

harmed by allowing J.M.A. to proceed under a pseudonym, the balance of the factors weighs in favor of naming J.M.A. *Id.*

On a related note, Rule 5.2 does not support J.M.A.'s request to proceed under a pseudonym. Rule 5.2(a)(3) provides: "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party or nonparty making the filing may include only: the minor's initials." Rule 5.2 consequently does not require that minors remain completely anonymous, but in fact requires parties to provide at least some identifying information for minors. Rule 5.2 also does not mandate similar redactions for parents or guardians ad litem. *See generally* Fed. R. Civ. P. 5.2. In turn, "the privacy protections of Rule 5.2" do not stretch as far as J.M.A. claims. (*Cf.* Doc. No. 4-1 at 4.)

## IV. CONCLUSION

For the foregoing reasons, J.M.A. has failed to establish special circumstances require that J.M.A. be allowed to proceed pseudonymously. J.M.A.'s Motion to Proceed Under a Pseudonym is consequently **DENIED**.

Accordingly, the Court **ORDERS** that on or before **November 24, 2026**, J.M.A. must file a first amended complaint that fully names J.M.A.

**IT IS SO ORDERED**.

Dated: November 17, 2026

Hon. Anthony J. Battaglia
United States District Judge